# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** <br> **Trevor Bill and** <br> **Jodie Bill,** <br><br> **Debtors,** | **Bankruptcy Case** <br> **No. 14-00392-JDP** |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Noah G. Hillen, Chapter 7 Trustee, Boise, Idaho.

    Richard A. Cummings, Cummings Law Office, Boise, Idaho, Attorney for Dixon Capital, LLC.

### *Introduction*

Before he filed for bankruptcy, chapter 7[1] debtor Trevor Bill ("Debtor") jointly owned a boat, motor, and trailer with his mother, Sheryl

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

Bill ("Sheryl").[2] The boat was encumbered by a security interest the Bills had granted to creditor Dixon Capital, LLC ("Dixon") to secure a loan to Sheryl, which Debtor agreed to co-sign. Shortly after Debtor filed the bankruptcy petition, at Sheryl's request, Dixon agreed to release its security interest so Sheryl could transfer ownership of the boat to herself, alone. In a new note, Sheryl then granted Dixon a new security interest in the boat to secure the balance due on the old note.

When all this came to light, chapter 7 trustee Noah G. Hillen ("Trustee") filed a motion to avoid the new lien claimed by Dixon on the boat. Dkt. No. 31. In response, Dixon argued that the lien is not avoidable.[3] Trustee and Dixon stipulated to the relevant facts, Dkt. No. 30, and after a hearing, the Court took the issues under advisement. This Memorandum of Decision constitutes the Court's findings of fact, conclusions of law, and decision concerning the issues. Rules 7052; 9014.

---

[2] The reference to Ms. Bill by first name is for clarity; no disrespect is intended.

[3] Sheryl did not oppose or respond to the motion.

MEMORANDUM OF DECISION – 2

*Facts*[4]

In August 2011, Sheryl applied for a loan from Dixon. Dixon was unwilling to make the loan to Sheryl without a co-signer. Debtor, Sheryl's son, agreed to co-sign the loan. On August 31, 2011, Sheryl and Debtor executed a promissory note (the "First Note") in the amount of $11,328.02 in favor of Dixon. To secure its repayment, the First Note granted Dixon a security interest in a 2005 Sweetwater Challenger Pontoon Boat (VIN ending CE505), a 2010 Metal Kraft Trailer, and a 60HP Mercury motor (collectively, the "Boat"). A short time later, a certificate of title was issued by the State of Idaho for the Boat (the "First Title"). Sheryl "or" Debtor were listed on the First Title as the owners of the Boat; Dixon was listed as the lienholder. Over the next two and a half years, 32 payments were made on the First Note by Sheryl; one payment was made by Debtor.

In March 2014, Sheryl contacted Dixon and requested that the First Note be rewritten by omitting Debtor because he wanted to buy a house,

---

[4] With only minor edits, these facts come from the parties' stipulation. Dkt. No. 30.

MEMORANDUM OF DECISION – 3

and releasing his liability under the First Note would assist in his efforts to obtaining financing. Based upon the good payment history, and the fact that the First Note had a reduced balance, Dixon agreed to Sheryl's request.

On March 18, 2014, Debtor filed a chapter 7 petition.[5] Unaware of Debtor's bankruptcy, on March 20, 2014, Sheryl executed a new promissory note (the "Second Note") agreeing to pay $5,629.44 to Dixon, the balance remaining on the First Note. The Second Note granted Dixon a security interest in the Boat and, according to its terms, replaced the First Note. Debtor did not approve or participate in this transaction, nor did he sign the Second Note.

Dixon became aware of Debtor's bankruptcy filing in April 2014. Then, on May 1, 2014, Dixon applied to the State for issuance of a new certificate of title for the Boat. The application sent to the State was accompanied by the existing title certificate. Sheryl "signed off" on the title certificate, and a representative of Dixon signed the title on the space

---

[5] Debtor's spouse, Jodie Bill, was a co-petitioner.

MEMORANDUM OF DECISION – 4

indicating "Signature Releasing Lien." On May 8, 2014, a new certificate of title (the "Second Title") was issued by the State listing Dixon as a lienholder and Sheryl as the sole owner of the Boat.

In the bankruptcy case, Dixon, Sheryl, and Trustee executed a Stipulation for Sale of Personal Property. Dkt. No. 26. As provided in the Stipulation, Trustee then sold the Boat for $6,600, and is holding the sale proceeds pending the outcome of this litigation.[6]

*Analysis and Disposition*

Trustee argues that, when Debtor filed his bankruptcy petition, the Boat became property of the bankruptcy estate. Trustee therefore contends that the transfers of the ownership and security interest in the Boat after the filing of the bankruptcy petition effected by the transaction between Sheryl and Dixon are both avoidable under § 549(a).[7]

---

[6] In the Stipulation, Sheryl, Dixon, and Trustee also agreed that the Court could decide this issue through Trustee's motion, as opposed to an adversary proceeding under Rule 7001 . Dkt. No. 26 at ¶ 7.

[7] As discussed below, Trustee also argues that the avoided transfers are preserved for the benefit of the bankruptcy estate under § 551.

MEMORANDUM OF DECISION – 5

Dixon argues that only Debtor's interest in the Boat became property of the bankruptcy estate, and therefore, only the transfer of Debtor's interest in the Boat may be avoided by Trustee. Dixon then points out that because Debtor made only one of the loan payments under the First Note, while Sheryl made the rest, the extent of Debtor's interest in the Boat was significantly less than the interest owned by Sheryl. Moreover, Dixon argues, whatever interest Debtor may have had in the Boat, which became property of the estate when he filed his bankruptcy petition, was already encumbered by its perfected security interest in the Boat. Because of that, Dixon asserts, its security interest should not be disturbed.

Respectfully, as explained below, Dixon's spin on the legal consequences attending the facts in this case is flawed.

**I. Property of the Bankruptcy Estate.**

A. Applicable Law

When a bankruptcy petition is filed, a bankruptcy estate is created

MEMORANDUM OF DECISION – 6

composed of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). "The scope of the bankruptcy estate is broad, encompassing both tangible and intangible interest of the debtor." *Hopkins v. Frazier (In re Tews)*, 502 B.R. 566, 569 (Bankr. D. Idaho 2013) (citing *Gugino v. Knezevich (In re Pegram)*, 395 B.R. 692, 695 (Bankr. D. Idaho 2008)). Even so, while broad in scope, § 541(a) "does not expand a debtor's rights in property over what existed as of the date of filing." *Farmers Ins. Grp. v. Krommenhoek (In re Hiatt)*, 00.3 IBCR 131, 132 (Bankr. D. Idaho 2000) (citing *In re Waters Asbestos Co.*, 96.3 IBCR 103, 104 (Bankr. D. Idaho 1996) and *Elsaesser v. Trefz (In re Taylor)*, 95 IBCR 213, 214-15 (Bankr. D. Idaho 1995)). The determination of what property interests are included in the bankruptcy estate is made by reference to state law. *Butner v. United States*, 440 U.S. 48, 54 (1979).

Under Idaho's Vessel Titling Act, the State issues title certificates for boats in the same manner, subject to the same rules, and with the same

MEMORANDUM OF DECISION – 7

legal results, as for motor vehicles.  *See* Idaho Code §§ 67-7039 - 7041; *see also* Idaho Code § 49–501A.  In particular, Idaho Code § 67-7039(3) instructs that "all titling procedures for vessels shall be governed by title 49, Idaho Code.  Unless otherwise provided, the term 'vessel' shall be interchangeable with the term 'vehicle' throughout title 49, Idaho Code."

Title 49 of the Idaho Code governs the creation and transfer of interests in "vehicles".  Specifically, Idaho Code § 49-503 provides that "no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in the vehicle until he has issued to him a certificate of title to that vehicle[.]"  This statute "is 'strictly construed by the courts to promote the underlying legislative policy that vehicle ownership be determined exclusively by reference to the name on the certificate of title." *In re Tews*, 502 B.R. at 570 (quoting *In re Pegram*, 395 B.R. at 695).

The Court has had several occasions to apply this statutory scheme in the context of a bankruptcy case.  As relevant here, the Court has held,

MEMORANDUM OF DECISION – 8

under the Idaho scheme, that an individual listed on a vehicle's Idaho certificate of title on the date the filing of a bankruptcy petition is conclusively deemed to be the owner of the vehicle. *In re Woods*, 386 B.R. 758, 762 (Bankr. D. Idaho 2008) (citing *Hopkins v. Shradley (In re Shradley)*, 03.1 IBCR 7, 8 (Bankr. D. Idaho 2003) and *Hopkins v. Brasseux (In re Saunders)*, 08.1 IBCR 16, 17 (Bankr. D. Idaho 2008)). And if a vehicle title certificate lists multiple owners of a vehicle, as indicated by the use of an "or" on the title certificate, each of those listed individuals is deemed to be an owner of the vehicle, and if one of the listed owners files a bankruptcy petition, the vehicle becomes property of the bankruptcy estate without regard to which of the listed owners paid the purchase price of the vehicle. *In re Saunders*, 08.1 IBCR at 17.

    B.  <u>Application of Law to the Facts</u>

Here, under the decisions of this Court, when Debtor filed the bankruptcy petition, the Boat became property of the bankruptcy estate. This is because, under Idaho law, on the date of the bankruptcy filing,

MEMORANDUM OF DECISION – 9

March 18, 2014, the First Title listed the owners of the Boat as Debtor "or" Sheryl. *In re Woods*, 386 B.R. at 762; *In re Saunders*, 08.1 IBCR at 17. Contrary to Dixon's argument, it is of no consequence to this conclusion that Sheryl had paid nearly all of the payments due under the First Note. *See In re Saunders*, 08.1 IBCR at 17.

**II. Avoidance of Postpetition Transfers.**

A.  Applicable Law

Section 549(a) provides that "a trustee may 'avoid a transfer of property of the estate — (1) that occurs after the commencement of the case; and . . . (2) . . . (B) that is not authorized under this title or by the court.'" *See Aalfs v. Wirum (In re Straightline Inv., Inc.)*, 525 F.3d 870, 877 (9th Cir. 2008) (quoting § 549(a)(1), (a)(2)(B)). "Transfer" is defined expansively in the Bankruptcy Code:

> [t]he term 'transfer' means—
> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption;
> (D) each mode, direct or indirect, absolute or

MEMORANDUM OF DECISION – 10

>    conditional, voluntary or involuntary, of
>    disposing or parting with—
>    (i) property; or
>    (ii) an interest in property.

§ 101(54).

Rule 6001 provides that "[a]ny entity asserting the validity of a transfer under § 549 . . . shall have the burden of proof." *See Hopkins v. Suntrust Mort., Inc. (In re Ellis)*, 441 B.R. 656, 664 (Bankr. D. Idaho 2010); *Hopkins v. Lojek (In re Scheu)*, 356 B.R. 751, 755 (Bankr. D. Idaho 2006). Under § 549(a), while the trustee bears the burden of proving that a postpetition transfer of estate property occurred, the burden of proof as to the validity of that transfer is on the entity claiming the transfer was valid. *Rainsdon v. Davisco Foods Int'l, Inc (In re Azevedo)*, 497 B.R. 590, 595 (Bankr. D. Idaho 2013) (citing 10 COLLIER ON BANKRUPTCY ¶ 6001.01[2] (Alan Resnick & Henry J. Sommer eds. 16th ed.)). "The primary purpose of § 549 is to allow a trustee to avoid specific postpetition transfers regardless of whether the transfers deplete the estate." *In re Tews*, 502 B.R. at 570 (citing *In re Straightline Inv., Inc.*, 525 F.3d at 878-79).

MEMORANDUM OF DECISION – 11

A transfer of property avoided under § 549(a) is preserved for the benefit of the estate pursuant to § 551, "but only with respect to property of the estate."[8] Section 551 "operates to preserve an avoided lien for the benefit of the bankruptcy estate so as to permit the trustee to step into the legal position of the creditor who's lien has been avoided, thereby preventing a junior lien holder (or a debtor) from improving its position at the expense[] of a debtor's unsecured creditors." *In re Seibold*, 351 B.R. 741, 746 (Bankr. D. Idaho 2006) (citing *In re Mingo*, 97.2 IBCR 46, 48 (Bankr. D. Idaho 1997)).  However, trustees do not acquire "greater rights in the property than those of the creditor whose rights the trustee avoids." *Id.*

B.  Application of Law to the Facts

In this case, two unauthorized postpetition transfers of property of the estate occurred that Trustee is entitled to avoid under § 549(a), and to preserve for the benefit of the estate under § 551.

---

[8] Section 551 provides: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."

MEMORANDUM OF DECISION – 12

The first transfer occurred on March 20, 2014, two days after Debtor filed his bankruptcy petition when Dixon and Sheryl entered into the Second Note, which granted Dixon a new lien in the Boat.  Recall that, pursuant under § 101(54)(A), a "transfer" includes "the creation of a lien." Because the Boat was property of the bankruptcy estate at that time, Trustee has established that Sheryl's grant of a new security interest to Dixon amounted to a postpetition transfer of property of the estate.

The burden then shifted to Dixon to show that the postpetition transfer was either authorized by the Court or by the Bankruptcy Code. But Dixon concedes that the Court did not authorize this transfer, and Dixon has offered no basis under the Bankruptcy Code to validate such a transfer.  Therefore, Trustee may avoid the fixing of Dixon's lien under the Second Note pursuant to § 549(a), and he may preserve Dixon's status as the lienholder pursuant to § 551 for the benefit of the bankruptcy estate as against Sheryl.

Concerning this transaction, Dixon's attempt to characterize Sheryl's

MEMORANDUM OF DECISION – 13

execution of the Second Note, and issuance of the Second Title, as merely a continuation of its prebankruptcy security interest is belied by the terms of the documents.  The Second Note provides:  "[t]his note replaces the original note dated August 31, 2011 and removes [Debtor] from the note."  Moreover, in a separate paragraph, the Second Note grants Dixon a new security interest in the Boat.  That Dixon was obtaining a new lien on the Boat in this transaction is evidenced by its acknowledgment on the First Title that it was releasing the existing lien evidenced by that certificate.  Admittedly, had Dixon simply refused to accommodate Sheryl's request, it would have had an enforceable, unavoidable prebankruptcy security interest in the Boat.  But that reality can not alter the legal consequences of the transactions it engineered after the bankruptcy was filed.  When the documents are fairly read, it is clear that Dixon intended to release its existing lien under the First Title and to take a new lien under the Second Note, and that issuance of the Second Title was its attempt to perfect that lien.

MEMORANDUM OF DECISION – 14

The second transfer Trustee is entitled to avoid under § 549(a) is the issuance of the Second Title, which effectively divested Debtor—and the bankruptcy estate—of an ownership interest of the Boat under Idaho law. Under the Code, a "transfer" includes "disposing or parting with— (i) property; or (ii) an interest in property" § 101(54)(D).  Therefore, when Sheryl, with Dixon's help, removed Debtor's name from the First Title, a postpetition transfer occurred.  Dixon again concedes this postpetition transfer was not authorized by the Court, and Dixon provides no justification under the Bankruptcy Code to support that transfer.

Therefore, in summary, pursuant to § 541(a) and the applicable Idaho law, the Boat became property of the estate when Debtor filed the bankruptcy petition.  Trustee may avoid as an unauthorized postpetition transfer under § 549(a) Sheryl's grant of a security interest in the Boat to Dixon in the Second Note.  Under § 551, this security interest is preserved for the benefit of the estate, and as against Sheryl, Trustee assumes Dixon's position under the Second Note.  Because Dixon released its prepetition

MEMORANDUM OF DECISION – 15

security interest based upon Sheryl's agreement to grant it a postpetition lien, Dixon holds no enforceable interest in the Boat.

Trustee may also avoid the postpetition transfer effected by the issuance of the Second Title removing Debtor as an owner of the Boat under § 549(a). As a result, because under Idaho law, Debtor was an "owner" of the Boat under the "or" First Title, Trustee was entitled to sell the Boat and may distribute the sale proceeds to the creditors of the bankruptcy estate.[9]

*Conclusion*

Trustee's motion to avoid the postpetition transfers by Dixon will be granted in a separate order. Trustee shall prepare and submit an appropriate order for entry by the Court. Counsel for Dixon shall approve

---

[9] The exercise of the § 549(a) avoiding power by Trustee in this case may appear to work an injustice against Sheryl and Dixon, while bestowing a windfall on Debtor's unsecured creditors. As noted above, had Dixon not honored Sheryl's request and released its prepetition lien, that lien would have survived Debtor's bankruptcy in tact. But Dixon was not powerless to protect its interests. A simple PACER search would have provided notice to Dixon that Debtor had filed a bankruptcy case, and with this information, Dixon perhaps would have made a different decision concerning Sheryl's request.

MEMORANDUM OF DECISION – 16

the form of the order.

Dated: April 16, 2015

*(signature)*

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 17